UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD DENSON<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF GILLESPIE, et al,<br><br>Defendants. | Case No. 2:10-cv-00525-APG-VCF<br><br>**ORDER GRANTING LVMPD DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. #136) |

*Pro se* plaintiff Richard Denson was struck by an unmarked police truck while officers attempted to arrest him for burglarizing a Wendy's restaurant. Denson sued the Las Vegas Metropolitan Police Department ("LVMPD"), Sherriff Gillespie, and all officers present when he was struck, including: Officers Kinch, Giannone, Layton, Overson, Collins, Hirshi, Gennaro, Beck, Siwy, and Ducas (collectively, the "LVMPD Defendants").

Denson asserts two claims in this 42 U.S.C. § 1983 action.[1] First, Denson claims the LVMPD Defendants used excessive force by using a police truck to apprehend him. Second, Denson claims the LVMPD Defendants were deliberately indifferent to his medical needs at the scene of the arrest.

The LVMPD Defendants have submitted evidence showing that the collision was an accident, and Denson has failed to provide admissible evidence raising a genuine dispute as to this fact. Because there is insufficient evidence that any officer intentionally used force against Denson, the LVMPD Defendants are entitled to summary judgment on his excessive force claim.

---

[1] Denson also brings a third claim against NaphCare, Inc. for treatment he received while incarcerated at the Clark County Detention Center. My ruling on that motion is contained in a separate Order.

Second, Denson provides virtually no evidence to indicate the LVMPD Defendants were deliberately indifferent to his medical needs. In contrast, the LVMPD Defendants have submitted evidence showing that they provided reasonable medical care on the scene. The LVMPD Defendants are thus entitled to summary judgment on Denson's deliberate indifference claim.

**I.   BACKGROUND**

Because of Denson's criminal history, the LVMPD's Repeat Offender Program ("ROP") was conducting surveillance on Denson for some time.[2] On January 7, 2010, at about 1:40 a.m., ROP officers tailed Denson from his home to a Wendy's restaurant. Officers observed Denson clamber up onto the roof of the Wendy's with a black bag in tow.[3] When Denson came down from the roof several minutes later, officers in marked cars converged on him.[4] Denson dropped his bag and fled.[5] During his attempted escape, Denson was hit by Detective J. Ducas' unmarked police truck.[6] Denson collided with the truck on the passenger-side of its front grill. After being struck, Denson was taken into custody for burglary and conspiracy to commit burglary.[7]

Despite that Denson initially refused medical treatment, officers radioed for an ambulance shortly after the collision.[8] Paramedics responded, examined Denson, and released him.[9] Denson

---

[2] (Dkt. #136, Ex. B, at 2.)
[3] (*Id.* at 3.)
[4] (*Id.* at 4.)
[5] (*Id.*)
[6] (*Id.*)
[7] (*Id.* at 4-5.)
[8] (Dkt. #136, Ex. E.)
[9] (Dkt. #136, Ex. D, at 4.)

complained of pain and requested additional medical care. Officers again radioed for an ambulance. This time paramedics took Denson to University Medical Center for treatment.[10]

Later that day, Denson was transported to the Clark County Detention Center ("CCDC") and booked.[11] Once at CCDC, NaphCare, Inc. took responsibility for Denson's medical care.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12] For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[14] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[15] She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[16]

---

[10] (*Id.* at 1.)

[11] (Dkt. #134, Ex. D.)

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[15] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[16] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

A party must support or refute the assertion of a fact with admissible evidence.[17] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[18] Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity. A document filed pro se is "liberally construed."[19] But, nevertheless, pro se litigants must follow the same rules of procedure that govern other litigants.[20]

**B.    42 U.S.C. § 1983**

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.…

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the U.S. Constitution and federal statutes.[21] Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[22] "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right

---

[17] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[18] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

[19] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[20] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986).

[21] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[22] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

secured by the Constitution and laws of the United States, and must [2] show that the alleged deprivation was committed by a person acting under color of state law."[23]

Municipalities are not "vicariously liable for the deprivation of constitutional rights by employees."[24] To be liable, the municipality itself must deliberately implement a policy or custom which causes a constitutional violation.[25] A municipality may be liable for failing to act only if its failure was intentional, amounting to "deliberate indifference" to an individual's constitutional rights.[26]

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[27] A pattern of violations is "ordinarily necessary" to demonstrate deliberate indifference.[28] Negligence, including medical malpractice, "does not become a constitutional violation merely because the victim is a prisoner."[29] In fact, even gross negligence is insufficient to establish a constitutional violation.[30] Finally, a § 1983 plaintiff can prevail only by demonstrating that the alleged policy is so "closely related to the ultimate injury" as to constitute the "moving force behind" it.[31]

---

[23] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[24] *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014).

[25] *Id.*

[26] *Id.*

[27] *Connick*, 131 S.Ct. at 1360.

[28] *Id.*

[29] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[30] *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *I.W. v. Grubbs*, 92 F.3d 894, 897 (9th Cir. 1996).

[31] *Wayman v. Cnty. of Los Angeles*, 23 F. App'x 770, 773 (9th Cir. 2001) (citations omitted).

### III. **DISCUSSION**

#### A. **Fourth Amendment claim**

Denson's first claim is that Detective Ducas intentionally hit Denson with his truck, therefore using excessive force in violation of the Fourth Amendment. Denson argues that the individual defendants are liable for participating in a conspiracy to hit him with a truck, and that LVMPD is liable for failing to train its officers about using vehicles to hit fleeing suspects.

Only intentional conduct can form the basis of a Fourth Amendment violation.[32] Because Denson has failed to create a genuine dispute about whether his collision with the truck was an accident, his Fourth Amendment claims fail.

The LVMPD Defendants submitted unrebutted evidence showing that Detective Ducas' collision with Denson was accidental.[33] Detective Ducas testified that Denson was being pursued by a police cruiser and that Denson suddenly veered to the side, out of the cruiser's path.[34] According to Ducas, Denson was looking over his shoulder as he changed directions so he did not see Ducas approaching in his truck.[35] When Denson suddenly crossed into the path of Ducas' vehicle, Ducas slammed on the brakes, skidded, but was too late to avoid hitting Denson.[36] Ducas repeatedly testified that he did not intend to hit Denson.[37]

---

[32] *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). *Kassab v. San Diego Police Dep't*, 453 F. App'x 747, 748 (9th Cir. 2011) (affirming summary judgment because plaintiff failed to create a genuine dispute of material fact as to whether defendant acted intentionally).

[33] (Dkt. #136, Ex. C, at ¶¶3-4.)

[34] (*Id.* at ¶15.)

[35] (*Id.*)

[36] (*Id.* at ¶16.)

[37] (*Id.* at ¶¶ 15-16.)

Denson has submitted no admissible evidence rebutting Ducas' testimony, save a bare allegation—in his responsive papers—that Ducas hit him intentionally.[38] Denson seems to suggest that, because there were skid marks and damage to the vehicle from Denson's impact, Ducas must have been speeding and must have acted intentionally.[39] But I fail to see how these facts are probative of Ducas' intent. If anything, that Ducas slammed on his breaks and skidded to a halt cuts against Denson's argument that Ducas was trying to hit him.

Denson's own testimony undermines his allegation that Ducas ran him down on purpose. While being treated for his injuries on the scene, Denson admitted that he did not know whether the collision was intentional. In his statement to police, Denson admitted Ducas apologized for accidentally hitting him and that he believed Ducas was sincere.[40] At his deposition, Denson admitted he "didn't know if [the collision] was deliberate or not"[41] and that he was "not trying to accuse anyone of anything deliberate."[42]

Regarding his claim for excessive force against the LVMPD as an entity, Denson must prove a custom or policy was a moving force behind a constitutional violation.[43] Because I find there was no Fourth Amendment violation, LVMPD cannot be liable for this claim.

---

[38] Denson has submitted no admissible evidence indicating Ducas was acting intentionally, relying instead on conclusory statements without citation. For example, Denson states in his response that he "does not agree that this was an accident" without citing to any evidence. While *pro se* parties are given some leeway, Denson's bare allegations cannot defeat a motion for summary judgment. *See Orr*, 285 F.3d at 773; *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").

[39] (Dkt. #143, at 5-6.)

[40] (Dkt. #136, Ex. A, at 102-03.)

[41] (Dkt. #136, Ex. A, at 131-32.)

[42] (*Id.*, Ex A, 131:9-132:5-7, 102-03; Ex. B, at 4; Ex. C, at 2-3; Ex. I.).

[43] *City of St. Louis v. Praprotnik*, 485, U.S. 112, 121 (1988).

Based on the evidence before me, no reasonable juror could find Ducas acted intentionally. Because there is no genuine dispute about whether Denson's injury was an accident, the LVMPD Defendants are entitled to summary judgment on his Fourth Amendment claims.[44]

**B.     Fourteenth Amendment claim**

Denson also claims the LVMPD Defendants violated his Fourteenth Amendment rights by failing to provide proper medical care after the collision—both at the scene and once Denson was incarcerated at CCDC. To prove a Fourteenth Amendment violation based on a failure to provide medical care, Denson must show the defendants were "deliberately indifferent" to his safety.[45] A defendant is liable under this standard only if she "knows of and disregards an excessive risk to . . . health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[46]

Denson argues the LVMPD Defendants were deliberately indifferent to his medical needs because, despite his injuries, they moved him, handcuffed him, and delayed calling for medical assistance. First, Denson provides no admissible evidence to support his allegation that he was not given adequate medical care.[47] The LVMPD Defendants provide unrebutted evidence showing that officers first called for medical aid shortly after Denson's injury,[48] and called a

---

[44] Because I find no Fourth Amendment violation occurred based on the lack of intentional conduct, I need not reach defendants' alternative arguments regarding this claim.

[45] *Simmons v. Navajo Cnty., Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010) (holding that a claim that a pretrial detainees' constitutional rights were violated by failing to address her medical needs is analyzed under a "'deliberate indifference' standard").

[46] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[47] Denson again relies on conclusory statements made in his responsive papers. *See* (Dkt. #143, at 14-17.)

[48] (Dkt. #136, Ex. E.)

Page 8 of 10

second time at 4:14 a.m. after Denson changed his mind and requested medical care.[49] Denson testified that, once he asked for medical aid, the ambulance arrived a "short time" later.[50] Paramedics then transported Denson to the hospital. Once transferred to CCDC, NaphCare—the company that manages inmate medical care at the jail—examined and treated Denson.[51] Defendants provided substantial evidence showing that Denson received adequate medical care once at the CCDC.[52]

Even if Denson had raised a triable issue as to whether he received adequate care, there is no evidence defendants ignored a known, serious risk to his health or safety. Denson refused medical treatment shortly after his injury. He was conscious, alert, and able to communicate with officers.[53] Officers called for medical assistance shortly after Denson was injured, and again when Denson requests medical care. His injuries were minor enough that the University Medical Center released him into the care of CCDC without admitting him.[54] Merely because officers handcuffed Denson and there was a delay before the ambulance arrived is not enough to raise a triable issue about whether defendants knowingly ignored a serious risk to Denson's health or safety.

---

[49] (*Id.* at Ex. D.)

[50] (*Id.* at Ex. A, at 104.)

[51] (*Id.* at Ex. G.)

[52] (*Id.* at Ex. A, at 107:1-9; 117:16-19,23; 118:11; Ex. B, at 4; Ex., at 3-4; Ex. D, at 3-4; Ex. E, at 1,3; Ex. F; Ex. G.)

[53] (*Id.* at Ex. C, at ¶19.)

[54] (*Id.* at Ex. B, at 6; Ex. G.)

## IV. **CONCLUSION**

IT IS THEREFORE ORDERED that the LVMPD defendants' Motion for Summary Judgment (Dkt. #136) is GRANTED. Judgment is entered in favor of the Las Vegas Metropolitan Police Department, Sherriff Gillespie, and Officers Kinch, Giannone, Layton, Overson, Collins, Hirschi, Gennaro, Beck, Siwy, and Ducas.

DATED this 5th day of January, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE